NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| COLD SPRING GRANITE COMPANY, | : : : | Case No. 3:19-cv-8491-BRM-TJB |
| Plaintiff, | : : |  |
| v. | : : : | OPINION |
| RLI INSURANCE COMPANY, | : : : |  |
| Defendant. | : : |  |

**MARTINOTTI, DISTRICT JUDGE**

Before this Court is Defendant RLI Insurance Company's ("RLI") Motion to Dismiss Plaintiff Cold Spring Granite Company's ("Cold Spring") Amended Complaint for failure to state a claim, failure to join necessary parties, and because the claims are barred by the entire controversy doctrine. (ECF No. 19.) Cold Spring opposes the Motion. (ECF No. 23.) Having reviewed the submissions filed in connection with the motions and having declined to hold oral argument pursuant to Federal Rule of Civil Procedure 78(b), for the reasons set forth below and for good cause shown, RLI's Motion to Dismiss is **DENIED.**

    **I.**    **BACKGROUND**

For the purposes of deciding Motions to Dismiss, the Court accepts the factual allegations in the Amended Complaint as true and draws all inferences in the light most favorable to the Plaintiff. *See Phillips v. Cty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008). Further, the Court also considers any "document *integral to or explicitly relied upon* in the complaint." *In re*

1

*Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (quoting *Shaw v. Dig. Equip. Corp.*, 82 F.3d 1194, 1220 (1st Cir. 1996)).

This action arises from the alleged breach of contract where RLI failed to defend and indemnify Cold Spring in a lawsuit filed by the Roman Catholic Diocese of Metuchen (the "Diocese"). (ECF No. 12 ¶ 1.)

In 2008, Cold Spring entered into an agreement (the "Mausoleum Agreement") with the Diocese for the design and construction of a Mausoleum (the "Mausoleum Project"). (*Id.* ¶ 13.) Cold Spring then hired West Rac as the general contractor of the Mausoleum Project pursuant to an agreement entered into in July 2010 (the "West Rac Agreement"). (*Id.* ¶ 14.) The West Rac Agreement requires "[t]he Contractor shall purchase and maintain insurance and provide bonds as set forth in Article 11 of AIA A201-2007." (ECF No. 12, Ex. 1 at Article 10.) The agreement states:

> The contractor shall cause the commercial liability coverage required by the Contract Documents to include (1) the Owner as additional insured for claims caused in whole or in part by the Contractor's negligent acts or omissions during the Contractor's operations; and (2) the Owner as an additional insured for claims caused in whole or in part by the Contractor's negligent acts or omissions during the Contractor's completed operations.

(*Id.* at Article 11.1.4)

The West Rac Agreement further provides that West Rac is required to indemnify Coldspring for "claims, damages, losses, and expenses, including but not limited to attorneys' fees, arising out of or resulting from performance of the work . . . to the extent caused by the negligent acts or omissions of the Contractor, a Subcontractor." (*Id.* at Article 3.18).

RLI issued West Rac primary commercial general liability policies for the periods of May 31, 2010, to September 30, 2011 ("2010-2011 Policy"), and September 30, 2011, to

January 30, 2013 ("2011-2013 Policy") (together, "Primary Policies"). (ECF No. 12 ¶ 18.) The Primary Policies have an occurrence limit of $1 million, a general aggregate limit of $1 million and a products-completed operations aggregate limit of $2 million. (*Id.* ¶ 19.) In addition, RLI issued West Rac two corresponding excess liability policies. The first policy was for the period of May 31, 2010, to September 30, 2011, and the second policy was for the period of September 30, 2011, to January 30, 2013. (*Id.* ¶ 20.)

The Primary Policies are issued on an "occurrence" basis.[1] (*Id.* ¶ 24.) In addition, the Primary Policies contain coverage for bodily injury and property damage.[2] (*Id.* ¶ 24.) Accordingly, the Primary Policies contain a "Subcontractor Exception" covering "property damage to [RLI's work and arising out of it where the defective work was performed by RLI's subcontractor."[3] (*Id.* ¶ 29.)

The Primary Policies also contain an "Additionally Insured Endorsement" provision. (*Id.* ¶ 32.) This provision is intended to cover parties such as Cold Spring in its role as "owner" or a party required to be named as an additional insured per the West Rac Agreement. (*Id.* ¶ 33.) Specifically, the 2011-2013 Primary Policy contains an Additional Insured Endorsement covering "owners" when required by the contract for liability arising from the insured's "completed

---

[1] The Primary Polices define "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions. (ECF No. 12 ¶ 26.)

[2] The Primary Policies covers "those sums that the insured becomes legally obligated to pay as damages because of bodily injury or property damage to which this insurance applies. We will have the right and duty to defend the insured against any suit seeking those damages even if the allegations are groundless, false, or fraudulent." (ECF No. 12 ¶ 24.)

[3] Plaintiff's mistakenly discuss the "Subcontractor Exception" covering property damage to RLI's work, however, RLI is the issuer—not the insured.

3

operations."[4] (*Id.* ¶ 34.)

On March 3, 2015, the Diocese filed a lawsuit against Coldspring in the Superior Court of New Jersey, Law Division Somerset County ("Underlying Action"). (*Id.* at Ex. 5.) In the Underlying Action, the Diocese alleges that shortly after completing the construction for the Mausoleum, the Diocese discovered "a number of significant defects, including roof leaks, unsafe carpet and tile misalignment, broken granite floor tiles and deficient and defect HVAC Systems through the mausoleum." (*Id.* ¶¶ 37-38.) Further, the complaint alleges nine causes of action against Cold Spring, but the "gravamen" of the complaint is that Cold Spring was "careless and negligent in the design and construction of [the Mausoleum], and failed to perform the construction of [the Mausoleum] in a good and workmanlike manner."[5] (*Id.* ¶ 44.)

Cold Spring filed an answer on June 5, 2015 and brought a third-party complaint against West Rac and various subcontractors ("Third-Party Complaint"). (*Id.* ¶ 46.) The Third-Party Complaint alleges West Rac carelessly and negligently performed its general contractor duties and "is liable for all injuries and damages caused or proximately caused by its negligence in the performance of its duties."[6] (*Id.* ¶ 47.) Further, the Third-Party Complaint seeks contribution and

---

[4] The provision lists as additional insureds "[a]ll owners where required by written contract signed prior to a loss and lists [l]ocations where required by written contract." (ECF No. 12 ¶ 35.)

[5] The nine causes of action against Cold Spring are: (1) breach of contract; (2) breach of implied duty of good faith and fair dealing; (3) breach of express warranties; (4) breach of implied warranty to construct the Mausoleum in a workmanlike manner and in conformance with industry standards; (5) breach of implied warranty of reasonably competent design; (6) breach of implied warranty of fitness for intended use; (7) negligence; (8) negligence and professional malpractice; and (9) breach of duty to prepare complete and adequate specifications. (ECF No. 12, Ex. 5.)

[6] These duties include: "construction activities, the hiring of subcontractors, supervision of the work being performed, review of all plans and specifications, ensuring that the work performed was in compliance with the plans, specifications and all applicable standards and codes, in addition any and all other negligent action that may be discovered in the future." (ECF No. 12 ¶ 47.)

4

indemnification from West Rac and asserts a breach of West Rac's contractual obligation to defend and indemnify Cold Spring. (*Id.* ¶ 48.)

After filing the Underlying Action, on June 15, 2017, West Rac brought a declaratory judgment action in the Superior Court of New Jersey, Law Division Somerset County. *West Rac Contracting Corp v. Peerless Insurance Company, et al.* ("Underlying DJ Action"). (*Id.* ¶ 60.) In the Underlying DJ Action, West Rac named 30 separate insurers of its subcontracts seeking additional insured coverage for liability stemming from the Mausoleum Project and the Underlying Action. (*Id.* ¶ 61.) West Rac did not name RLI in the Underlying DJ Action, nor is Cold Spring a party. (*Id.* ¶ 63.) However, on October 19, 2017 the Underlying DJ Action was consolidated with the Underlying Action and was ultimately stayed. (*Id.* ¶ 62.)

Consequently, Cold Spring filed this action against RLI on March 13, 2019 (ECF No. 1) and amended as of right on May 24, 2019. (ECF No. 12.) Cold Spring's one-count Amended Complaint asserts a claim for breach of contract and/or duty to defend and indemnify. (*Id.* ¶ 67.) RLI moved to dismiss the Amended Complaint on June 21, 2019. (ECF No. 19.) On August 5, 2019, Cold Spring filed an Opposition to the Motion to Dismiss. (ECF No. 23.)

## II.   LEGAL STANDARD

### A.   Federal Rule of Civil Procedure 12(b)(6)

In deciding a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a district court is "required to accept as true all factual allegations in the complaint and draw all inferences in the facts alleged in the light most favorable to the [plaintiff]." *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008). "[A] complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). However, the plaintiff's "obligation to provide the 'grounds'

5

of his 'entitle[ment] to relief' requires more than labels and conclusions and a formulaic recitation of the elements of a cause of action." *Id.* (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). A court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan*, 478 U.S. at 286. Instead, assuming the factual allegations in the complaint are true, those "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for misconduct alleged." *Id.* This "plausibility standard" requires the complaint allege "more than a sheer possibility that a defendant has acted unlawfully," but it "is not akin to a probability requirement.'" *Id.* (quoting *Twombly*, 550 U.S. at 556). "Detailed factual allegations" are not required, but "more than an unadorned, the defendant-harmed-me accusation" must be pled; it must include "factual enhancements" and not just conclusory statements or a recitation of the elements of a cause of action. *Id.* (citing *Twombly*, 550 U.S. at 555, 557).

"Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)). However, courts are "not compelled to accept 'unsupported conclusions and unwarranted inferences,'" *Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007) (quoting *Schuylkill Energy*

6

*Res. Inc. v. Pa. Power & Light Co.*, 113 F.3d 405, 417 (3d Cir. 1997)), nor "a legal conclusion couched as a factual allegation." *Papasan*, 478 U.S. at 286.

While, as a general rule, the court may not consider anything beyond the four corners of the complaint on a motion to dismiss pursuant to Rule 12(b)(6), the Third Circuit has held that "a court may consider certain narrowly defined types of material without converting the motion to dismiss [to one for summary judgment pursuant to Rule 56]." *In re Rockefeller Ctr. Props. Sec. Litig.*, 184 F.3d 280, 287 (3d Cir. 1999). Specifically, courts may consider any "document *integral to or explicitly relied upon* in the complaint." *Burlington Coat Factory*, 114 F.3d at 1426 (quoting *Shaw*, 82 F.3d at 1220).

### III. DECISION

#### A. Breach of Contract

##### 1. Existence of a Contract

RLI contends Cold Spring cannot assert a breach of contract claim because no contract exists between Cold Spring and RLI. (ECF No. 19-1 at 7.)

To properly plead a breach of contract claim, a plaintiff must allege: (1) a contract existed; (2) breach of that contract; (3) damages flowing therefrom; and (4) that the party stating the claim performed its own contractual obligations." *Frederico v. Home Depot*, 507 F.3d 188, 203 (3d Cir. 2007).

Generally, an individual or entity that is a "stranger to an insurance policy" has no right to recover the policy proceeds. *See Ross v. Lowitz,* 120 A.3d 178, 189 (N.J. Sup. Ct. 2015) (quoting *Gen. Acc. Ins. Co. v. N.Y. Marine & Gen. Ins. Co.,* 727 A.2d 1050 (N.J. Super. Ct. 1999)). However, a "third-party [beneficiary] may sue upon a contract made for their benefit without privity of contract." *Rieder Cmtys., Inc. v. Twp. Of N. Brunswick,* 546 A.2d 563, 566 (App. Div.

7

1988); *See also* N.J. Stat. § 2A:15-2 (stating "[a] person for whose benefit a contract is made . . . may sue thereon in any court . . . although the consideration of the contract did not move from him").

The standard applied in determining the status of a third-party beneficiary is "whether the contracting parties intended that a third party should receive a benefit which might be enforced in the courts." *See Rieder,* 546 A.2d at 566 (quoting *Brooklawn v. Brooklawn Housing Corp.,* 124 N.J.L. 73, 77 (E. & A. 1940)). When determining the intent of the contracting parties to benefit an unnamed third party, courts examine the contract and the circumstances surrounding its execution. Id. (citing *Gold Mills, Inc. v. Orbit Processing Corp.*, 297 A.2d 203, 204 (Super. Ct. 1972)).

RLI first argues that Cold Spring has no claim for breach of contract because no contract exists between Cold Spring and RLI and therefore has no valid basis for a breach of contract claim. (ECF No. 19 at 7-8.) However, Cold Spring contends their status as an "additional insured" gives them standing as a third-party beneficiary to the Primary Policies. (ECF No. 23 at 8.)

Here, it is clear West Rac and RLI intended to make Cold Spring a third-party beneficiary to the Primary Policies. First, the West Rac Agreement required West Rac to purchase insurance and to add Cold Spring as an additional insured to their policy for claims caused by the negligent acts or omissions of West Rac. (ECF No. 12 ¶¶ 15-16.) *See Rieder,* 546 A.2d at 566. Second, the West Rac Agreement requires indemnification for claims, damages, losses, and expenses to the extent caused by the "negligent acts or omissions of the Contractor[.]" (*Id.* ¶ 17.) Finally, the "Additional Insured Endorsements" clause covers those who "have agreed in writing in a contract or agreement that such person or organization be added as an additional insured on your policy." (*Id.* ¶ 33.) Additionally, several courts in this Circuit have held additional insured have standing as third-party beneficiaries to bring breach of contract claims. *See, e.g. Indian Harbors Ins. Co. v.*

8

*NL Envtl. Mgmt. Servs., Inc.*, No. 13-1889, 2016 U.S. Dist. LEXIS 85495, at *6 (D.N.J. June 30, 2016) (finding an additional insured to be a third-party beneficiary to a bargained for contract); *Ramara, Inc. v. Westfield Ins. Co.*, 814 F.3d 660, 668 (3d Cir. 2016) (a breach of contract action brought by an additional insured to an insurance policy); *NVR, Inc. v. Motorists Mut. Ins. Co.*, 371 F. Supp. 3d 233 (W.D. Pa. 2019) (additional insured bringing an action against an insurer for breach of contract and failure to defend and indemnify).

Taken together, it is clear West Rac Agreement intended to make Cold Spring a third-party beneficiary to the Primary Policies. These allegations are sufficient to plead a breach-of-contract claim at this stage.

### 2. Declaratory Judgment

RLI next contends dismissal is appropriate because declaratory judgment is Cold Spring's "sole and proper remedy" to seek relief in this matter. (ECF No. 19-1 at 8.) Specifically, RLI argues a declaratory judgment action is the exclusive remedy in this action because there is no contract between RLI and Cold Spring. (*Id.* at 8.)

The Declaratory Judgment Act, 28 U.S.C. § 2201, provides that a court "[i]n a case of actual controversy within its jurisdiction . . . may declare the rights and other legal relations of an interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). District courts have "unique and substantial discretion in deciding whether to declare the rights of litigants." *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 136 (2007) When exercising that discretion, a district court must act within the bounds of the Declaratory Judgment Act and in accordance with the principles of "sound judicial administration." *Elecs. for Imaging, Inc. v. Coyle*, 394 F.3d 1341, 1245 (Fed. Cir. 2005). Moreover, "[w]hile a declaratory judgment action is not precluded by the existence of alternative form[s] of relief, there is ordinarily

no reason to involve its provisions where another adequate remedy is available." *Watkins v. Bai Rands, LLC,* No.17-2715, 2018 U.S. Dist. LEXIS 27237, at *10-11 (D.N.J. Feb. 20, 2018) (quoting *Hammond v. Doan,* 316 A.2d 68, 70 (N.J. Super. Ct. App. Div. 1974)).

Here, RLI's argument relies on *Rarick v. Federated Serv. Ins. Co.*, 852 F.3d 223 (3d Cir. 2017). RLI claims *Rarick* supports its position that a viable claim for breach of contract cannot exist without a declaration of whether Cold Spring is an additional insured. (ECF No. 19-1 at 9.) However, *Rarick* states that "[n]on-declaratory claims are 'independent' of a declaratory claim when they are alone sufficient to invoke the court's subject-matter jurisdiction and can be adjudicated without the requested declaratory relief." *Id.* at 228. Therefore, a party is not required to bring a declaratory judgment action so long as its non-declaratory claims are independent of its declaratory claims. Here, Cold Spring has asserted itself as a third-party beneficiary under the Primary Policies. Because this claim also invokes this Court's subject matter jurisdiction—through diversity jurisdiction—it may be adjudicated without declaratory relief. *See Watkins*, 2018 U.S. Dist. LEXIS 27237, at *10-11. Therefore, RLI's Motion to Dismiss on these grounds is **DENIED**.

### 3. Premature Damages

Further, RLI contends Cold Spring's claim is premature because there has been no determination that Cold Spring is actually an additional insured. (ECF No. 19-1 at 15.) Additionally, RLI contends Cold Spring's breach of contract claim for failure to defend/indemnify is premature because there has not been a decision in the Underlying Action. (*Id.* at 16.) At the outset, the Court has already determined Cold Spring is an additional insured under the Primary Policies. *See supra* p. 8-9. However, RLI's second contention requires the Court to analyze the principles governing duty to defend and duty to indemnify claims.

An "insurer's duty to defend is typically broader than its duty to indemnify." *Grand Cove II Condo. Ass'n, Inc. v. Ginsberg,* 676 A.2d 1123, 1130 (N.J. Super. Ct. App. Div. 1996). For example:

> The insurer's obligation to defend is triggered by a complaint against the insured alleging a cause of action which may potentially come within the coverage of the policy, irrespective of whether it ultimately does come within the coverage and hence irrespective of whether the insurer is ultimately obligated to pay.

*Hartford Ins. Grp. v. Marson Constr. Corp.,* 452 A.2d 473, 474 (N.J. Super. Ct. App. Div. 1982), *certif. denied*, 460 A.2d 656 (N.J. 1983).

The Supreme Court has held "the duty to defend extends only to claims on which there would be a duty to indemnify in the event of a judgment adverse to the insured." *Hartford Accident & Indem. Co. v. Aetna Life & Cas. Ins. Co.,* 483 A.2d 402, 405 (N.J. 1984).

An insurer's "duty to defend is determined by comparing the allegations in the complaint with the language of the policy." *Voorhees v. Preferred Mut. Ins. Co.,* 607 A.2d 1255, 1259 (N.J. 1992). "[T]he complaint should be laid alongside the policy and a determination made as to whether, if the allegations are sustained, the insurer will be required to pay the resulting judgment, and in reaching a conclusion, doubts should be resolved in favor of the insured." *Danek v. Hommer*, 100 A.2d 198, 203 (N.J. Super. Ct. App. Div. 1953), *aff'd,* 105 A.2d 677 (N.J. 1954). While the duty to defend is broader than the duty to indemnify, it "is not broader in the sense that it extends to claims not covered by the covenant to pay." *Grand Cove II Condo. Ass'n, Inc.*, 676 A.2d at 1130.

Here, Cold Spring's claim of breach of contract comprises both RLI's breach of its duty to defend and indemnify (ECF No. 12 ¶ 72.) As to the duty to defend claim, it is irrelevant that a determination of liability has not been made. *See Grand Cove II Condo. Ass'n, Inc.*, 676 A.2d at 1130 ("The insurer's obligation to defend is triggered by a complaint against the insured alleging

11

a cause of action which may potentially come within the coverage of the policy, irrespective of whether it ultimately does come within the coverage and hence irrespective of whether the insurer is ultimately obligated to pay.") Therefore, RLI's Motion to Dismiss Cold Spring's duty to defend claim is **DENIED.**

However, any controversy over Cold Spring's duty to indemnify is not ripe for adjudication. "As a general matter, courts refrain from adjudicating whether an insurer has a duty to indemnify an insured until after the insured is found liable for damages in an underlying action." *Hartford Ins. Co. v. Dana Transp. Inc.*, 2018 U.S. Dist. LEXIS 88659, at *14 (D.N.J. May 18, 2018) (quoting *Evanston Ins. Co. v. Layne Thomas Builders, Inc.*, 635 F. Supp. 2d 348, 353 (D. Del. 2009)). Because the Underlying Action remains pending, Cold Spring's duty to indemnify claim is not ripe for adjudication and the Court therefore declines to rule on it.

### B. Entire Controversy Doctrine

RLI separately contends Cold Spring's claims are barred by New Jersey's Entire Controversy Doctrine because this action and a pre-existing action filed in New Jersey Superior Court are "intrinsically linked" and involve the "same factual questions and legal issues." (ECF No. 19-1 at 13.)

New Jersey's Entire Controversy Doctrine is "an extremely robust claim preclusion device that requires adversaries to join all possible claims stemming from an event or series of events in one suit" *See Chavez v. Dole Food Co.*, 836 F.3d 205, 228 n.130 (3d Cir. 2016). The doctrine requires a party to bring in a single action all affirmative claims it might have against another party or be precluded from bringing a subsequent action involving the same common core of facts. *See Opdycke v. Stout,* 233 F. App'x 125, 129 (3d Cir. 2007). Additionally, the Third Circuit has ruled that "[a] federal court hearing a federal cause of action is bound by New Jersey's Entire

Controversy Doctrine . . . by virtue of the Full Faith and Credit Act, 28 U.S.C. § 1738 (1994)." *Litgo N.J., Inc. v. Comm'r N.J. Dep't of Envtl. Prot.,* 725 F.3d 369, 400 n.2 (3d Cir. 2013) (quoting *Rycoline Prods. v. C&W Unlimited*, 109 F.3d 883, 887 (3d Cir. 1997)).

The "central consideration" in determining whether a subsequent claim should be barred "is whether the claims against the different parties arise from related facts or the same transaction or series of transactions." *Wadeer v. New Jersey Mfrs. Ins. Co.*, 110 A.3d 19, 27 (N.J. 2015). The Underlying Action—to which RLI is not a party—arises from Cold Spring's and other parties' alleged failure to properly design and construct the Mausoleum Project. Meanwhile, the current action arises from RLI's alleged breach of its contractual duty to defend and indemnify Cold Spring pursuant to the Primary Policies. As such, the two actions do not involve the same transaction or common core of facts. Accordingly, the Entire Controversy Doctrine does not bar the current action.

### C. Necessary Parties

RLI contends this claim cannot be adjudicated because Cold Spring has failed to implead necessary parties pursuant to Fed. R. Civ. P. 19. (ECF No. 19-1 at 7.) Specifically, RLI argues Cold Spring has failed satisfy FCRP 19 by omitting the subcontractors—along with their respective insurers—hired by Cold Spring and West Rac. *Id.*

Pursuant to Fed. R. of Civ. P. 19(a), the joinder of parties is necessary if their joinder is "feasible." The rule states:

> A person who is subject to service of process and whose joinder will not deprive the court of jurisdiction over the subject matter of the action shall be joined as a party in the action if (1) in the person's absence complete relief cannot be accorded among those already parties, or (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect that interest or (ii) leave any of the persons

13

> already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest.

Courts treat clauses (1) and (2) as disjunctive—meaning if either subsection is satisfied, the nonparty is necessary and therefore should be joined. *Gen. Refractories Co. v. First State Ins. Co.*, 500 F.3d 306, 312 (3d Cir. 2007) ("As Rule 19(a) is stated in the disjunctive, if either subsection is satisfied the absent party is necessary and should be joined if possible.") (quoting *Koppers Co. v. Aetna Cas. & Sur. Co.,* 158 F.3d 170, 175 (3d Cir. 1998)).

Here, the absence of "downstream" parties would not impede non-parities' ability to protect their various interests. The Underlying Action concerns the obligations owed to West Rac under the policies of its subcontractors' insurers. (ECF No. 12 ¶¶ 61-63.) However, this action concerns the coverage obligation owed to Cold Spring as an additional insured under the Primary Policies. Ultimately, because of the distinct policy coverage questions between the two actions, the question of whether RLI breached its obligation under the Primary Policies will not be determined in the Underlying DJ Action.

Finally, RLI's contention that the subcontractors and insurers are necessary because there is a threshold priority of coverage question lacks merit. First, Cold Spring was not a party to those subcontractor contracts. Additionally, even if there exist subcontractor policies that could afford Cold Spring coverage, this alone does not require dismissal for failure to join the subcontractors and their insurers. Indeed, this Circuit has "repeatedly held that simply because a party has a right to contribution or indemnity from a non-party does not render the latter indispensable under Rule 19." *Landmark Am. Ins. Co. v. FDC Fire Prot., Inc.*, No. 08-3513, 2010 WL 1838377, at *2 (D.N.J. May 6, 2010) (citing *General Refractories Co v. First States Ins. Co.*, 500 F.3d 306 (3d Cir. 2007)). Accordingly, RLI's Motion to Dismiss for failure to join necessary parties is **DENIED.**

## IV. CONCLUSION

For the reasons set forth above, RLI's Motion to Dismiss is **DENIED.** An appropriate order follows.

Date: February 27, 2020                           */s/ Brian R. Martinotti*
                                                  **HON. BRIAN R. MARTINOTTI**
                                                  **UNITED STATES DISTRICT JUDGE**